[Cite as *State v. Naff*, 2019-Ohio-1261.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MIAMI COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-15 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-345A |
| | : | |
| MATTHEW J. NAFF | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 5th day of April, 2019.

. . . . . . . . . . .

PAUL M. WATKINS, Atty. Reg. No. 0090868, Assistant Prosecuting Attorney, Miami County Prosecutor's Office, 201 West Main Street, Troy, Ohio 45373
    Attorney for Plaintiff-Appellee

MARCY A. VONDERWELL, Atty. Reg. No. 0078311, P.O. Box 24805, Huber Heights, Ohio 45424, and MICHAEL R. BOOHER, Atty. Reg. No. 0007694, 120 West Second Street, Suite 1718, Dayton, Ohio 45402
    Attorneys for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, J.

**{¶ 1}** Defendant-appellant Matthew J. Naff appeals from his conviction for felonious assault and discharge of a firearm on or near a prohibited premises. Naff contends that his jury trial waiver was not properly executed and that the trial court thus lacked "jurisdiction" to conduct a bench trial. He further contends that his conviction for discharge of a firearm on or near prohibited premises was not supported by the weight of the evidence.

**{¶ 2}** We conclude that Naff affirmed his decision to waive a jury trial in open court, and therefore the waiver complied with R.C. 2945.05. We further conclude that there was competent, credible evidence in this record upon which the trial court could have relied in determining that Naff committed the offense of discharging a firearm on or near prohibited premises.

**{¶ 3}** Accordingly, the judgment of the trial court is affirmed.

## I. Facts and Procedural History

**{¶ 4}** On May 22, 2017, police were dispatched to Naff's residence on State Route 571 in Miami County based upon reports of gunshots. Following an investigation, Naff and Eric Brown were arrested. They were both subsequently indicted on one count of felonious assault and one count of discharging a firearm on or near prohibited premises. Each count carried a firearm specification.

**{¶ 5}** Both Naff and Brown waived trial by jury and proceeded to a joint bench trial. During trial, John Couch, who worked for a repossession company, testified that on the

morning of the incident, he went to the Naff residence and attempted to contact Naff's wife, Lisa, regarding repossession of a Dodge truck. He testified that he knocked on the front door of the residence, but no one responded. According to Couch, he went to his vehicle to retrieve a contact note he intended to leave for Lisa; he then went back to the front door and knocked again. Couch was in the process of leaving the contact note in the door when Naff opened the door. Couch testified that he informed Naff that he needed to speak to Lisa regarding the Dodge pickup truck; Naff indicated that Lisa was his wife, and then said, "hold on," and shut the door.

{¶ 6} Couch testified that he was still at the front door when he heard gunshots from the side rear area of the home. At that point, he began to walk back to his vehicle, which was parked on the side of the road partially in the Naff's driveway. As he was heading to his vehicle, Couch observed Naff come around the side of the house with a firearm. Couch testified that Naff was screaming obscenities and threatening to kill him while firing the gun in his direction. As Couch was running, he felt a clump of dirt hit his pants. Couch then spotted Brown, also holding a gun, in the driveway.

{¶ 7} Couch testified that, when he got to his vehicle, he began to open the driver's door, but Naff arrived at the vehicle and prevented him from opening the door. Naff also pointed the gun directly at Couch. Couch testified that Brown then fired his weapon, causing Naff to become distracted. As Naff looked in Brown's direction, Couch ran across the road. As he was crossing the road, he noticed a car coming toward him, and the vehicle came to a stop. Couch testified that Naff continued to fire his weapon at Couch as Couch was crossing the road and that Naff crossed the road and fired at least one more round.

{¶ 8} Gary Larson testified that he was driving home on State Route 571 when he observed the incident. He testified that he had his car windows and heard a gunshot, prompting him to stop his vehicle as he approached the Naff residence. He then heard more gunshots. Larson observed Couch, with his hands up, backing across the roadway. He testified that he also observed a man in a white shirt enter the road with a gun in his hand which was extended toward Couch. Naff was identified as the person in the white shirt. Larson testified that he observed Naff fire the gun across the road. He then heard two to three more shots before he left the scene. Larson drove a safe distance from the scene and called 911.

{¶ 9} John Hartke testified that he and his wife were driving on State Route 571 toward their home when they saw three men running toward the road. One of the men ran in front of Hartke's car, causing Hartke to stop the vehicle. Hartke testified that the other two men were beside the road holding guns. He testified that one of the men motioned him to drive on. Hartke testified that as he drove away he observed Brown, from his rearview mirror, fire his gun.

{¶ 10} Lisa Naff testified that she had just gotten out of the shower when she heard a knock on her front door. According to her testimony, she opened the door but tried to close it because she did not recognize Couch. She testified that, as she attempted to close the door, Couch pushed the door open and entered the home; she screamed for her husband, who came from the rear of the house to the front. Lisa testified that her husband fired two to three shots into the ground, but that he did not aim the weapon at Couch.

{¶ 11} The trial court found Naff guilty of felonious assault and discharge of a

firearm on or near prohibited premises, as well as both gun specifications. The trial court sentenced Naff to an aggregate prison term of six years. Naff appeals. Brown was found guilty of the same offenses and received the same sentence, but his conviction is not on appeal in this case.

## II.    Jury Waiver

{¶ 12} Naff's first assignment of error states as follows:

THE TRIAL COURT LACKED JURISDICTION TO TRY APPELLANT BECAUSE APPELLANT'S WAIVER OF A JURY TRIAL WAS NOT KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY MADE, AND THE TRIAL COURT FAILED TO STRICTLY COMPLY WITH THE REQUIREMENTS OF R.C. 2945.05.

{¶ 13} Naff contends that, because there is no record of any colloquy between the trial court and him regarding the waiver of jury trial, the trial court failed to comply with the requirements of R.C. 2945.05.

{¶ 14} "The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, guarantees an accused the right to trial by jury." *State v. Lomax*, 114 Ohio St.3d 350, 2007-Ohio-4277, 872 N.E.2d 279, ¶ 6, citing *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). "Likewise, Section 5, Article I of the Ohio Constitution states that the 'right of trial by jury shall be inviolate.' However, Crim.R. 23(A)(1) allows a defendant to waive his right to a trial by jury in serious offense cases provided that the waiver is made knowingly, intelligently, and voluntarily, and in writing." (Footnote omitted.) *Id.*

{¶ 15} The procedure for waiving this right in Ohio is set forth in R.C. 2945.05, which states:

> In all criminal cases pending in courts of record in this state, the defendant may waive a trial by jury and be tried by the court without a jury. Such waiver by a defendant, shall be in writing, signed by the defendant, and filed in said cause and made a part of the record thereof. It shall be entitled in the court and cause, and in substance as follows: "I _____, defendant in the above cause, hereby voluntarily waive and relinquish my right to a trial by jury, and elect to be tried by a Judge of the Court in which the said cause may be pending. I fully understand that under the laws of this state, I have a constitutional right to a trial by jury."
>
> Such waiver of trial by jury must be made in open court after the defendant has been arraigned and has had opportunity to consult with counsel. Such waiver may be withdrawn by the defendant at any time before the commencement of the trial.

{¶ 16} "A written waiver is presumptively voluntary, knowing, and intelligent." *Lomax* at ¶ 10, citing *State v. Bays*, 87 Ohio St.3d 15, 19, 716 N.E.2d 1126 (1999), citing *United States v. Sammons*, 918 F.2d 592, 597 (C.A.6, 1990). However, for the waiver to be considered valid, it must be: "(1) in writing, (2) signed by the defendant, (3) filed, (4) made part of the record, and (5) made in open court." *Id.* at ¶ 9. "The term 'open court' means that court is in session, and that the judge is on the bench." *State v. Burnside*, 186 Ohio App.3d 733, 2010-Ohio-1235, 930 N.E.2d 372, ¶ 56 (2d Dist.), quoting *Linden v. Bates Truck Lines, Inc.*, 4 Ohio App.3d 178, 446 N.E.2d 1139 (12th Dist.1982).

{¶ 17} In order to comply with the statutory requirement that a jury waiver be made in open court, there must be "some evidence in the record of the proceedings that the defendant acknowledged the waiver to the trial court while in the presence of counsel, if any. Absent such evidence, the waiver does not comply with the requirements of R.C. 2945.05 and is therefore invalid." *Lomax* at ¶ 42. There is no need for "magic words, or a prolonged colloquy, but simply what Ohio law intends—that a defendant while in the courtroom and in the presence of counsel, if any, acknowledge to the trial court that the defendant wishes to waive the right to a jury trial." *Id.* at ¶ 48.

{¶ 18} In this case, Naff does not dispute that the first four requirements were satisfied. He signed a written waiver that complied with the statutory language and which was filed and made part of the record. He claims, however, that the trial court did not satisfy the open-court requirement,

{¶ 19} The record indicates that a jury trial waiver form was executed by Naff and his counsel and filed on November 11, 2017. Naff is correct in his assertion that there is no transcript of a hearing from that date indicating that the waiver was executed in open court. However, a final pretrial conference was conducted on April 16, 2018. Both Naff and Brown were present with their respective counsel. During this conference, the trial court conducted a full colloquy with Brown regarding his decision to waive trial by jury. The trial court then conducted the following colloquy with Naff and his counsel:

> THE COURT: Mr. Naff, I wanted to just – I have your Waiver of Jury Trial
> form. I don't know – remember if we did that on the record or not and
> discussed it here in court?
> MR. LOPEZ: We did, sir.

MR. NAFF:     Yes, sir.

MR. LOPEZ:     But we're willing to reaffirm, Your Honor, that I have explained to him, he understands his constitutional right to a jury trial and is voluntarily waiving that.

THE COURT:   Right.   Well that – this was filed back in November.   I just wanted to reiterate that that's still his desire to have this case tried to the Court and not to a jury.

MR. NAFF:   Yes, sir.

{¶ 20} Naff contends that this colloquy was not sufficient to meet the requirements set forth in R.C. 2945.05 or *Lomax*, 114 Ohio St.3d 350, 2007-Ohio-4277, 872 N.E.2d 279.   He thus, contends that there is no evidence in this record that he waived his right to a jury trial in open court.   We disagree.   While not ideal, the record is sufficient to demonstrate that Naff acknowledged his desire to waive a jury trial while in open court.

{¶ 21} Accordingly, the first assignment of error is overruled.

### III.     Manifest Weight of the Evidence

{¶ 22} Naff's second assignment of error is as follows:

APPELLANT'S CONVICTION FOR DISCHARGE OF FIREARM ON OR NEAR PROHIBITED PREMISES IN VIOLATION OF ORC 2923.162(A)(3)(C)(2) AND THE GUN SPECIFICATION CONTAINED THEREIN IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 23} Naff contends that the evidence did not support his conviction for discharging a firearm "upon or over a public road or highway" in violation of R.C.

2923.162(A)(3)(C)(2) because there was no evidence that he fired his gun upon or over the road as required by R.C. 2923.162(A)(3). In support, he argues that only one bullet was recovered on the opposite side of the road from his home. Naff further notes that, while Larson testified that he observed Naff shoot across the roadway, Hartke conversely testified that it was Brown who fired across the roadway. Naff further claims that Couch's testimony indicated that Naff had already crossed over the road before he fired the last shots at Couch.

**{¶ 24}** "A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 12. In reviewing a manifest weight challenge, this court reviews "the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [fact finder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶ 25}** "[B]ecause the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the

peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (August 22, 1997).

{¶ 26} In the case before us, we must give substantial deference to the trial judge as the trier of fact. The judge, of course, had the opportunity to see and hear the witnesses, and, thus, was in the best position to judge witness credibility. We find nothing in the record from which to conclude that the trial judge patently lost his way.

{¶ 27} Naff is correct that Hartke testified that he only saw Brown fire a shot across the road. However, there is also testimony in this record, from both Couch and Larson, which supports a finding that Naff fired his weapon across the roadway while Couch was crossing the road. None of this testimony was contradictory. It is quite possible that Hartke observed Brown, while Larson observed Naff, fire across the road. In other words, both Naff and Brown were observed shooting over the road. The mere fact that Hartke only observed Brown does not negate Larson's testimony.

{¶ 28} Based upon our review of the record, we conclude that the trial court did not lose its way nor create a manifest miscarriage of justice mandating that the conviction be reversed. Therefore, the second assignment of error is overruled.

## IV.    Conclusion

{¶ 29} Both of Naff's assignments of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HALL, J., concurs.

DONOVAN, J., concurs:

{¶ 30} The language cited by the majority from *Lomax*, 114 Ohio St.3d 350, 2007-Ohio-4277, 872 N.E.2d 279, and its progeny supports the resolution of the first assignment of error. However, I write separately to emphasize that the "jury waiver" record herein minimally complied with *Lomax,* R.C. 2945.05, and Crim.R. 23(A).

{¶ 31} The preferred practice should include, particularly when there is no transcript of an earlier execution of the waiver in open court, that the following three questions be asked of the defendant in open court prior to trial: (1) whether it is his/her signature on the written waiver, (2) whether it was signed voluntarily, and (3) whether anyone forced him/her to sign the waiver.

{¶ 32} However, the entire issue can be avoided in the first instance by strict compliance with R.C. 2945.05 in open court, on the record, with a thorough colloquy which appraises the accused of the value of a jury.

{¶ 33} This is a close case. In cases like this one, I would encourage trial judges to have the defendant execute a new waiver in open court on the record in order to avoid the potential for reversal.

Copies sent to:

Paul M. Watkins
Marcy A. Vonderwell
Michael R. Booher
Hon. Stacy M. Wall